# BELKNAP.

## THE STATE *v.* HARTIGAN *&* a.

In a capital trial, a witness whose name has not been furnished the defendants, may be examined to rebut some matter set up by them, although the testimony of the witness be such that it might have been introduced to prove the defendants guilty, provided it also have a direct tendency to rebut such defence.

WRIT OF ERROR, brought to reverse a judgment of the court of common pleas in this county.

John Hartigan and Patrick Hamley were indicted for assaulting Dennis Mahegan, on the 19th of December, 1847, and beating him with a gun barrel, so that he died on the 21st of the same month. Having been arraigned, and having severally pleaded not guilty, they were put upon their trial in the court of common pleas.

The government introduced evidence tending to show that the said respondents were guilty of the crime of which they stood charged, and, among other witnesses, Charles Mahegan, a brother of the deceased, was called, and testified, among other things, that he and Dennis Mahegan, the deceased, and others, were at the house of said Hartigan, on said 19th day of December, 1847 ; that while there, he heard an outcry from a room adjoining that in which he was, "that Dennis Mahegan was killed;" that he immediately stepped to the door of said room, and saw said Dennis fall-

ing upon the floor; that said Hartigan and Harnley and two others met him at the door of said room; that Hartigan told him "you dare not go in there where your brother is," and struck him, and that Hartigan and Harnley and the others laid hold of him, and beat him, and got him down, and that while down upon the floor the said Harnley lay upon him; that Harnley, when assistance was coming into the house to him, made his escape from the window, and that he had hold of the shirt bosom of said Harnley as he sprang away, and the bosom of the shirt was torn.

He also testified that said Dennis Mahegan, when taken from said room, was found to have received wounds upon his head, one of which had fractured his skull so as to occasion his death on the 21st day of said December.

Daniel Haley, another witness called on behalf of the State, testified, among other things, that he was at said Hartigan's house on said 19th of December, and heard said outcry, and soon after went out of the door; that he saw a man outside of the house whom he did not know, standing with an axe in his hand, which the witness took from him and threw away.

After the testimony on behalf of the State had been closed, the counsel for the respondents stated that the defence of said Harnley was an *alibi;* and they offered evidence tending to show that said Harnley, at the time when said Dennis Mahegan was struck, was at his boarding-house, and not at said Hartigan's house.

To rebut the defence of the said Harnley, the State called as a witness Samuel P. Rogers, whose name was not upon the list of witnesses furnished to the defendants, to whose testimony the defendants objected, on the ground that the testimony which he was called upon to give, and which he was proceeding to give, was not in the nature of a rebutting evidence; but the objection was overruled by the court. Said Rogers testified that while he had said Harnley under

arrest, as an officer, said Harnley told him that when he came out of Hartigan's house, on the occasion in question, he saw an axe lie there; that he was afraid that Mahegan or his men might strike him with it, and that he threw it into the water; that afterwards, at the examination of the defendants before a magistrate, Haley having testified that he took an axe from a man's hand at the door of Hartigan's house and threw it away, one Towle, another officer who was with him, said to Harnley, " How is this?" To which Harnley answered that he meant to have thrown the axe away, but that Haley took it from him and threw it away. Said Rogers also testified that, at another time, while conversing in relation to the matter, said Harnley showed him his shirt bosom, which was torn, and said that it was torn by Mahegan.

The said testimony of Rogers, and every part of it, was objected to by the defendant's counsel, because given by a witness whose name was not on the list of witnesses furnished, as required by law, to the defendants before their trial, and because it was not rebutting evidence; but the court ruled that it was rebutting evidence, and admitted the testimony.

The jury, having returned a verdict that the defendants were guilty, the defendants moved that said verdict should be set aside and a new trial granted, on account of the admission of said evidence; but the court refused said motion. And now the said defendants, before the adjournment of said court, pray that this bill of exceptions may be signed and made part of the record; and the same having been examined and found conformable to the truth, it was ordered by the presiding justice that it be made a part of the record in said case.

The errors assigned are, in substance, that the witness, Rogers, was permitted to testify to the several matters stated in the bill of exceptions, his name not having been on the

list of witnesses furnished by the State before the trial, and his evidence not being rebutting evidence.

*James Bell,* for the defendants.

The plaintiffs in error contend that there was error in the decision of the court below in admitting the testimony of Samuel P. Rogers, whose name was not on the list of witnesses furnished to the accused.

By the statute of 1843, witnesses may be called whose names are not on the list, to rebut or explain the defendant's evidence of new matter, or to discredit his witnesses.

The evidence excepted to in this case was admitted upon the ground that it was rebutting evidence. It was not offered for the purpose of explaining any part of the testimony offered by the defendants, nor for the purpose of discrediting their witnesses. There was nothing ambiguous in the testimony offered to establish an *alibi.* The government did not attempt to show that this testimony was given under a mistake or misapprehension, which could be corrected by an explanation, which they proposed to give, but their ground was that the testimony was in conflict with other facts established by the evidence, and was, therefore, untrue.

It probably will not be contended that the State's counsel could, by force of the statute of 1843, " discredit " the defendant's witnesses, simply by establishing facts inconsistent with those testified to by those witnesses; and, least of all, that this could be done where the facts thus attempted to be established are the same which were originally relied upon and attempted to be proved to make out the case against the defendants. Such a construction of the statute would, it is obvious, admit any and all descriptions of evidence, which might have been introduced if there had been no statute provision requiring a list of witnesses to be furnished, and would thus deprive the defendants of the

privilege intended to be granted them. It would seem to
be clear that the witnesses of the defendants are to be " dis-
credited " under this provision, either by impeachment of
their character for veracity, by evidence of their having given
contradictory accounts of the facts they undertake to relate,
or by showing that they have been convicted of some infa-
mous crime.

The only clause of the statute of 1843, therefore, under
which it can be contended, with any plausibility, that the
testimony in question could properly have been received, is
that which authorizes the reception of evidence " to rebut
new matter," introduced by the defendants, and the bill of
exception states, in terms, that the court admitted this as
rebutting evidence.

The whole question in the case, then, turns upon the
point whether the evidence excepted was properly rebutting
evidence. We contend, both on the reason of the thing
and upon authority, that it clearly was not rebutting evi-
dence. It is believed to be clear that no evidence is admis-
sible as rebutting evidence except that which goes to an-
swer the new matter of the defendants, by proofs of new
facts, destroying or neutralizing the effect of that new mat-
ter, and that no evidence which is merely confirmatory of
the facts originally proved by the prosecution, is admissible
as evidence in reply.

The testimony of Rogers was to no greater extent and
in no other way inconsistent with the defence of *alibi*, than
that of the other witnesses called in the first instance to sus-
tain the prosecution. It was evidence tending to show pre-
cisely the same state of facts, and would have been proper
and material evidence to have been originally introduced to
make out the case for the government. The testimony of
—— and of others, witnesses originally offered by the
State, might, upon any principles upon which that of Rog-
ers is competent as evidence in reply, have been reserved
and introduced as rebutting evidence with that of Rogers.

His testimony rebuts the defence of *alibi* only by adding strength to the original case of the government, and not by establishing new facts inconsistent with that defence. It tends merely to prove that Harnley was present when the homicide was committed, precisely as the other evidence for the State conduced to show that fact. Proof that Harnley was not at his boarding place when the affray took place, as testified by the witnesses called to establish the defence, would have been properly rebutting evidence. And it is easy to conceive other states of facts which might regularly have been shown in reply to this defence.

The precise point arising in this case has received a judicial decision in England, in the case of *Rex* v. *Hilditch & a.* 5 C. & P. 299. It was a prosecution for a robbery, and after the case for the prosecution had been closed, the defendants set up as their defence an *alibi*, viz. : that they were at a public house, at a considerable distance from the place at which the robbery was committed. The counsel for the prosecution wished to call a witness, in reply, to prove that he saw the prisoners near the spot at which the robbery was committed, and that, therefore, they could not have been at the public house. But Mr. Justice *Taunton* excluded the evidence, saying that proving the parties were near the spot at which the offence was committed, is evidence in chief and not evidence in reply. Whatever (he adds) is a confirmation of the original case, cannot be given as evidence in reply, and the only evidence which can be given as evidence in reply is, that which goes to cut down the case on the part of the defence, without being any confirmation of the case on the part of the prosecution.

This case, which has never been questioned, and which rests, as we believe, on principles perfectly plain and reasonable, shows that the evidence excepted to in this case was not rebutting evidence, and, therefore, could not be legally introduced through a witness whose name was not on the list furnished to the defendants.

As other authorities, tending more or less directly to establish the same rule of evidence, we refer to *Wittingham* v. *Bloxham*, 4 C. & P. 597; *Rex* v. *Stimpson*, 2 C. & P. 415; *Wharton* v. *Lewis*, 1 C. & P. 529.

The evidence excepted to, when received, of course, operated equally to the prejudice of both the defendants, by confirming the original case made by the prosecution against both.

*John Sullivan, attorney general*, for the State.

WOODS, J. By the Revised Statutes, ch. 225, § 3, the prisoners, in this case, were entitled to be furnished, forty-eight hours before the trial, with a list of the witnesses to be used by the State; but by an amendment of the statute, ch. 34, § 17 of the N. H. Laws, the State shall not be precluded from introducing other witnesses to rebut or explain any evidence of new matter offered by the defendants, or to discredit their witnesses.

To render admissible the testimony of a witness whose name has not been furnished according to the statute, the defendant must have offered evidence of new matter, or the testimony of the witnesses proposed to be introduced, must go to discredit those of the defendant.

By " new matter," however, is not to be understood merely that which proceeds upon the admission of the facts shown by the prosecution, and is in avoidance or explanation of them. Any thing set up in the way of defence that is capable of being disproved, whether it admits or avoids, or is in direct conflict with the case made, is to be regarded as new matter within the meaning of the statute, so as to admit the new witness to rebut or explain it. Indeed, it is not controverted that the *alibi* set up by the defendants is of that description, although it proceeds upon the utter denial of the facts proved by the prosecution.

The State *v.* Hartigan.

It is equally beyond controversy that the testimony of Rogers was such as plainly and directly rebuts the evidence of the *alibi*, by showing, from the admission of one of the defendants himself, that such evidence could not possibly be true. But because that testimony goes further, and tends, in connection with other proof, to establish the principal case of the government; because, in short, it was such as might have been admitted as direct evidence of the commission of the crime, it is said it cannot be admitted in the character of rebutting evidence.

But we cannot deem such a sound and reliable test of what is to be regarded as rebutting evidence. Where the new matter, like that in the present case, is in direct conflict with the evidence on the part of the prosecution, it might be very difficult to say of any evidence, introduced to rebut such new matter, that its tendency was not, in a greater or less degree, to corroborate the principal case. Undoubtedly, such is the tendency of that of Rogers. But any evidence whatever, drawn from the admissions of the defendants, tending to disprove the *alibi*, would derive its chief force from showing that the *alibi* set up was a mere afterthought, and a shallow device of conscious guilt. Yet its admission must be justified, if at all, upon the narrow ground that it rebuts the case set up by the defendant.

Such are the nature of testimony and the rules of law which regulate its use in trials, that it may be, and often is, of a character to be used for another purpose than the one which authorizes its introduction. But its liability to be so used has never been considered as any objection to the testimony, if it has been brought within any rule which allows it to be introduced to the jury. If evidence be competent for one purpose in a cause, it is properly receivable for that purpose, although for some other purpose it may not be admissible. In such a case, it is to be submitted to the jury as being relevant to, and as having a bearing upon

the question which it is competent to prove. For these reasons and upon these grounds, we discover no error in the record of the judgment of the court of common pleas, which has been brought before us by these proceedings, and, therefore, are of opinion that the judgment must be affirmed.

*Judgment affirmed.*